UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LILLIAN GRANDERSON                                                                              PLAINTIFF

V.                                                       CIVIL ACTION NO. 3:19-CV-724-DPJ-FKB

BENNIE KIRKLAND MANAGEMENT                                                         DEFENDANT
COMPANY, INC.

ORDER

Plaintiff Lillian Granderson sued her former employer, Defendant Bennie Kirkland Management Co., Inc. ("Kirkland Co."), alleging that it violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA") by demoting her because of her race and age and then creating a hostile work environment. She also alleged retaliation but has since waived that claim. Kirkland Co. now seeks summary judgment. The Court finds that Kirkland Co.'s motion [19] should be granted.

I.      Factual Background

Kirkland Co. manages apartment complexes. Kirkland Decl. [19-2] ¶ 2. In 1995, its president, Bruce Kirkland ("Bruce"[1]), hired Granderson to be the company's property supervisor. *Id.* ¶ 3; Granderson Dep. [19-3] at 23–25 (deposition pagination). In this role, Granderson managed all Kirkland Co. properties, overseeing the on-site managers at each location. Granderson Dep. [19-3] at 21, 23. As Kirkland Co. grew, other property supervisors were hired. *Id.* at 23–25.

In 2009, Bruce delegated additional responsibilities to Granderson. Thereafter, in addition to being directly responsible for select Kirkland Co. properties, Granderson was placed

---

[1] While the Court would not normally refer to a person by their given name, it does so here only to avoid confusion between Kirkland Co. and Bruce Kirkland. The record citations to his declaration will appear as "Kirkland Decl."

in charge of all property supervisors.  *See id.* at 26, 52–54; Kirkland Decl. [19-2] ¶ 4.  In other words, directly or indirectly, Granderson was responsible for every Kirkland Co. property.  Granderson was also charged with exclusively handling tasks such as approving contracts, payrolls, and vendors.  Granderson Dep. [19-3] at 22–23, 69.  Based on her increased role, Granderson gave herself the tile regional manager.  Kirkland Decl. [19-2] ¶ 4; Granderson Dep. [19-3] at 27–28.

But things changed around 2015 when Bruce began taking a more active role in the company.  Kirkland Decl. [19-2] ¶ 5; *see* Granderson Dep. [19-3] at 24, 36.  Bruce says he had grown dissatisfied with Granderson's management and notes that several properties "faced unacceptable vacancy rates, high expenses, and collections issues."  Kirkland Decl. [19-2] ¶ 5.  About two years later, on February 14, 2017, Bruce reorganized the management structure, stripping Granderson of some duties, including her authority over the property supervisors.  Kirkland Decl. [19-2] ¶ 8; Granderson Dep. [19-3] at 57–58.  At that point, Granderson essentially functioned as a property supervisor, responsible only for the properties she directly oversaw.  Granderson Dep. [19-3] at 74–75; Kirkland Decl. [19-2] ¶ 8.  Granderson contends that this constituted a demotion.

After that, the working relationship between Bruce and Granderson soured.  Granderson Dep. [19-3] at 80–81; Kirkland Decl. [19-2] ¶¶ 9–10.  Bruce says Granderson's enthusiasm declined and she became hostile towards his counseling.  Kirkland Decl. [19-2] ¶ 10.  Granderson reports feeling "micromanaged," "harassed," and "bullied."  Granderson Dep. [19-3] at 81.

On March 14, 2019, Granderson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  In it, she alleged:

> Beginning February 14, 2017[,] and on a continuous basis, I am being harassed. My job duties have been removed (demoted) . . . and given to . . . a younger White male. . . .  I am constantly scrutinized, spoken to in a degrading manner . . . [and denied] the tools to allow me to perform the duties assigned.

EEOC Charge [1-1] at 1.  The EEOC issued a right to sue letter, and Granderson filed this suit on October 9, 2019.  Five days later, Granderson resigned from Kirkland Co.  2d Resignation Letter [19-7] at 1.  The Court has both personal and subject-matter jurisdiction over the dispute.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  It must "interpret all facts and draw all reasonable inferences in favor

of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37 F.3d at 1075.

III.   Analysis

As noted, Granderson waived her retaliation claim in response to Kirkland Co.'s summary-judgment motion, so that portion of the motion is granted.  That leaves her claims for race- and age-based demotion and hostile work environment.  There are two primary issues:  (1) whether these claims are barred by the statute of limitations and, if not, (2) whether Granderson has created a material dispute as to either.[2]

    A.   Statute of Limitations

Kirkland Co. contends that Granderson failed to administratively exhaust her Title VII and ADEA claims.  Neither statute allows an employee to sue an employer unless they first exhaust administrative remedies through a timely charge of discrimination with the EEOC. *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (quoting *Patton v. Jacobs Eng'g Grp.*, 874 F.3d 437, 443 (5th Cir. 2017)); *see* 42 U.S.C. § 2000e-5(f); 29 U.S.C. § 626(d)(1).  Granderson had 180 days from "the alleged unlawful employment practice" to file her charge.  42 U.S.C. § 2000e-5(e)(1).  This window "begin[s] to accrue 'when the plaintiff knows or

---

[2] In her memorandum, Granderson suggests that she was forced to leave Kirkland Co.  *See* Pl.'s Opp'n Mem. [36] at 4, 6, 9.  Kirkland Co. fears that she is now attempting to assert a constructive-discharge claim, but, as it correctly notes, Granderson neither pleaded a constructive-discharge claim nor exhausted that claim with the EEOC.

reasonably should know that the discriminatory act has occurred." *Merrill v. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (quoting *Cervantes v. IMCO, Halliburton Servs.*, 724 F.2d 511, 513 (5th Cir. 1984)).

        1.        Demotion Claim

Granderson became aware of her alleged demotion on February 14, 2017, but she did not file her charge until March 14, 2019, more than 750 days later. To overcome this delinquency, Granderson invokes the continuing-violation doctrine, "a federal common law doctrine governing accrual." *Heath v. Bd. of Supervisors for S. Univ & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017). The doctrine "extends the limitations period when a violation manifests itself over time, rather than as discrete acts." *Hearn v. McCraw*, 856 F. App'x 493, 496 (5th Cir. 2021) (quoting *Doe v. United States*, 197 F. Supp. 3d 933, 939 (S.D. Tex. 2016), *aff'd* 853 F.3d 792 (5th Cir. 2017)). In short, the doctrine provides that, "[a]s long as '*an* act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Heath*, 850 F.3d at 737 (emphasis added) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002)).

Granderson argues that she timely exhausted the demotion claim because Kirkland Co. harassed her within 180 days of her EEOC charge of discrimination. *See* Pl.'s Mem. Opp'n [36] at 4. But the Supreme Court has distinguished "between discrete act claims and ongoing harassment claims[:] . . . the latter, but not the former, may qualify as continuing violations." *Heath*, 850 F.3d at 740 (generally citing *Morgan*, 536 U.S. 101). "Discrete actions," which are not continuing violations, are "one-time employment event[s], including . . . demotions . . . that 'constitute[] a separate actionable unlawful employment practice,' and therefore, should place an

Case 3:19-cv-00724-DPJ-FKB   Document 39   Filed 03/31/22   Page 6 of 16

employee on notice that a cause of action has accrued." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004) (quotation marks omitted) (quoting *Morgan*, 536 U.S. at 114). Notably, plaintiffs "cannot breathe new life into [a time-barred discrete-act claim] by simply incorporating it into [a] hostile work environment claim." *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 288–89 (5th Cir. 2008) (per curiam). Because the demotion occurred outside the filing period, Granderson's race- and age-based-demotion claims must be dismissed.[3]

### 2. Hostile-Work-Environment Claim

Kirkland Co. argues that the continuing-violation doctrine is likewise inapplicable to Granderson's hostile-work-environment claim because she could not "recall a single date when any alleged . . . harassment . . . occurred." Def.'s Supp. Mem. [20] at 11. But in her deposition, Granderson alleged that the harassment occurred "[e]very day." Granderson Dep. [19-3] at 108–110, 115. The Court assumes that her EEOC charge was timely filed, and, under *Morgan*, it would include any alleged acts of harassment occurring before the statutory window. 536 U.S. at 117.

### B. Merits

"A hostile work environment exists when the 'workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Johnson v. PRIDE Indus.*, 7 F.4th 392, 399–400 (5th Cir. 2021) (quoting *Harris v. Forklift Sys., Inc.*, 510

---

[3] Granderson cites the demotion as proof that alleged harassing conduct was based on her race or age, so even though it is time-barred, the Court will examine the demotion claim on its merits later in this Order.

U.S. 17, 21 (1993)).  Kirkland Co. says Granderson limited her harassment claim to six

categories of events, which it described as follows:

- [Bruce] micromanaged her by frequently calling to see where she was and what she was doing while she was out of the office during working hours. [Granderson Dep. [19-2]] at pp. 81–82.

- He once told her: "you give me too little credit, and you better quit while you're ahead" shortly after he changed her duties.  *Id.* at pp. 83-85.

- He would not personally tell her she could leave when he closed the office early on some Fridays.  *Id.* at pp. 107-08.

- He would say that he did not receive Ms. Granderson's time off forms when she purportedly placed them in his mailbox (although he never refused to allow her to take time off of work).  *Id.* at pp. 107-08; 187.

- He would leave checks in Ms. Granderson's office for her required signature with questions or comments about the items being paid.  *Id.* at pp. 107-09.

- Mr. Kirkland would call Ms. Granderson at 4:00 p.m. and ask her to return to the office to sign checks (which required two signatures).  *Id.* at pp. 109-10; 231.

Def.'s Supp. Mem. [20] at 20–21.  Granderson never directly refutes that characterization of her claims; though she generally references her deposition testimony and states that Bruce also withheld important funding for her properties to make her "uncomfortable."  Pl.'s Opp'n Mem. [36] at 8.  Other than that, she offers conclusory descriptions of the alleged harassment.  *See id.*

For these alleged acts to state a hostile-work-environment claim, Granderson would have to show that she

(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Johnson*, 7 F.4th at 399–400 (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

There is no dispute Granderson belongs to a protected class, but Kirkland Co. primarily disputes

whether the alleged harassment was based on race or age and whether it was sufficiently severe or pervasive. Though both points are valid, the causation issue is dispositive.

When asked during her deposition why she thinks the harassment was based on race or age, Granderson responded: "Because of being a black female, running the property for that long and being demoted at that time because of something that I did not do. That's how it ties it all together." Granderson Dep. [19-3] at 129. Her summary-judgment response takes a similar approach. There, the merits discussion of the hostile-work-environment claim never ties the facts to the elements of such a claim. Instead, Granderson again addresses the demotion claim and the elements for it. *See* Pl.'s Opp'n Mem. [36] at 11 (discussing elements for discrete acts of discrimination in harassment section of memorandum). Presumably, Granderson hopes to establish causation by showing (1) that she is Black and suffered harassment and (2) was demoted in favor of a younger White employee.[4]

For starters, if Granderson intended to say that the alleged harassment violated Title VII because she is Black and suffered harassment, that is not enough. Neither Title VII nor ADEA "protect employees from hostile conduct that is not based on their protected status." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996). In other words, "[p]oor treatment without more is not sufficient to show harassment based on [a protected trait], even if [the plaintiff] believes [that trait] to be the motivating factor for the poor treatment." *Eaton-Stephens v. Grapevine Colleyville Ind. Sch. Dist.*, 715 F. App'x 351, 356 (5th Cir. 2017) (per curiam); *see Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 329 (5th Cir. 2008) (per curiam) (finding "inappropriate" comments not "based on race" could not "sustain a race-

---

[4] If that is not Granderson's point, then she has failed to "identify specific evidence in the record and [] articulate precisely how this evidence supports [her hostile-work-environment] claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citations omitted).

8

based hostile work environment claim"). Notably, federal law "is not a general civility code for the American workplace." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999). And "'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." *Ramsey*, 286 F.3d at 269 (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) (finding insufficient evidence that alleged mistreatment was because of plaintiff's race).

As noted, Granderson also testified that the demotion decision tied "it all together." Granderson Dep. [19-3] at 129. If she means that the demotion claim shows the alleged hostile work environment was based on race and age, that argument fails because the demotion claim would not survive summary judgment if considered on the merits. *See Andrews v. Exxon Mobil Corp.*, No. 18-01101-BAJ-RLB, 2020 WL 6786902, at *3 (M.D. La. Nov. 18, 2020) (considering merits of time-barred, discrete-acts claims offered as "background evidence").

Demotion claims under Title VII and the ADEA both utilize the three-step *McDonnell Douglas* framework when—as here—the plaintiff relies on circumstantial rather than direct evidence of discrimination. *See Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (per curiam) (Title VII); *Harris v. City of Schertz*, 27 F.4th 1120 (5th Cir. 2022) (ADEA). Under that analysis, the plaintiff must first establish a prima facie case of discrimination by showing "that she (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or . . . that others similarly situated were treated more favorably." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)). Defendant concedes all but the fourth element.

9

Granderson *argues* that she meets that test because her "duties and responsibilities were given to Joey Ashley," a younger, White coworker, and, thus, Ashley replaced her.  Pl.'s Opp'n Mem. [36] at 10.  But not all duties were reassigned.  As Granderson said in her deposition, the management duties were "all divided up."  Granderson Dep. [19-3] at 69.  She kept some, and Bruce gave others to Ashley and Shep Paige, a Black employee who was older than Granderson.  *See id.* at 69–70.  Significantly, Granderson testified that Ashley was not promoted to her former position and remained a "property supervisor before and after [Granderson's] demotion."  *Id.* at 78.

At the prima facie stage, "an employee 'has not been replaced . . . when [her] former duties are distributed among other coworkers.'"  *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294–95 (5th Cir. 2014) (per curiam) (quotation marks omitted) (quoting *Rexses v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010) (per curiam)).  And that appears to be what happened here.  Kirkland Co. changed the management structure, giving some of Granderson's responsibilities to existing co-workers, but Granderson herself testified that no one assumed her position.  Granderson Dep. [19-3] at 78.  Kirkland Co. did not replace Granderson.

Nor can Granderson show that she was treated less favorably than Ashley.[5]  To establish her prima facie case this way, Granderson must show that Kirkland Co. treated Ashley better

---

[5] It is not clear that Granderson makes this precise argument.  But she does mention disparate treatment in her memorandum, and the parties spend considerable time disputing whether Ashley is a similarly situated co-worker.  *See* Pl.'s Opp'n Mem. [36] at 11.  Whether he was similarly situated would not matter if Granderson is merely trying to show that Ashely replaced her.  But she can also satisfy the fourth element by showing that Ashley received more favorable treatment.  *See Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (stating a plaintiff may establish fourth element of prima facie discriminatory-demotion case by showing she "was replaced by someone outside h[er] protected group or was treated less favorably than other

"under nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). "'[N]early identical' is not 'synonymous with 'identical.'" *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012), as revised (June 22, 2012) (quoting *Kan. City S. Ry. Co.*, 574 F.3d at 260).

"The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job." *Kan. City S. Ry. Co.*, 574 F.3d at 260. Kirkland Co. therefore argues that Ashley is an inapt comparator because he was a property supervisor whereas Granderson was regional manager before her demotion. Def.'s Mem. [20] at 16. Granderson pushes back, arguing that she too was a property supervisor and never served as regional manager. Pl.'s Opp'n Mem. [36] at 10. But that's not what she said in her deposition. When asked, she testified that before being demoted, she was the "regional manager." Granderson Dep. [19-3] at 27–28.

Titles aside, her "work responsibilities" differed from Ashley's and other property supervisors. *Lee*, 574 F.3d at 260 (noting that employees with differing responsibilities and differing violations "are not similarly situated"). Granderson explained that when she was regional manager, all on-site managers would report to her, Granderson Dep. [34-9] at 22–23, and she was solely responsible for tasks such as approving contracts, payrolls, and vendors, *id.* at 69. After the demotion, those duties were "divided up," *id.*, meaning Ashley never performed all of them. *See also id.* at 72 (explaining that property supervisors began reporting directly to Bruce and doing "their own thing"). Accordingly, Granderson fails to show that she and Ashley

---

similarly situated employees outside the protected group" (citations omitted)). The Court therefore considers the argument.

11

were similarly situated when she was demoted. Finally, Granderson has not shown that Ashley's work performance raised the same issues that Bruce cited for demoting Granderson.

For these reasons, Ashley is not a valid comparator, and Granderson has not demonstrated a prima facie case of discriminatory demotion. So even viewed as background evidence, the demotion fails to show that Kirkland Co. created a hostile work environment based on Granderson's race or age.

That result would remain the same even if Granderson could state a prima facie case related to the demotion because she has not rebutted Kirkland Co.'s rationale for demoting her. At the second stage of the burden-shifting analysis, the employer must "provide 'a legitimate, non-discriminatory reason' for the adverse employment action." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). Kirkland Co. claims that it removed some of Granderson's duties due to "the Company's performance under her leadership and Mr. Kirkland's renewed ability to be more involved in the Company's day-to-day operations." Def.'s Supp. Mem. [20] at 16 (citing Kirkland Decl. [19-2] ¶ 5). These issues satisfy Kirkland Co.'s burden of production, and Granderson never suggests otherwise.

The burden therefore returns to Granderson "to show that those reasons are pretextual." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521 (5th Cir. 2021) (citation omitted). Pretext may be suggested "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010)). "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory

reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Granderson has not met that burden. Starting with Bruce's renewed oversight, Granderson argues that he "was always [her] manager"; he was "always involved in company operations"; and his renewed involvement in management decisions amounted to nothing more than him giving her duties to Ashley. Pl.'s Opp'n Mem. [36] at 11. While the pages she cites for that argument do address some reassignments Bruce made—which are not disputed—they do not address Bruce's return to operational management. *See* Granderson Dep. [19-3] at 70, 117.

Elsewhere, Granderson's testimony tracks Kirkland Co.'s contention that Bruce took a more active management role beginning in 2015. First, Granderson was asked to confirm the averment in Paragraph 7 of her Complaint that things changed in "2015 when Mr. Bruce Kirkland decided to take a more involved role in the management of the properties." *Id.* at 28. She responded, "That's what he said." *Id.* More tellingly, Granderson testified that until 2015, Bruce focused on growing the company and purchasing more properties, leaving the "leadership of the properties" to Granderson. *Id.* at 29. That's the same thing Bruce said in his declaration. *See* Kirkland Decl. [19-2] ¶ 4 (stating that he delegated responsibilities to Granderson because he lacked time for "day-to-day operations" while trying to "grow the number of properties").

As for underperformance during Granderson's leadership, she admits that at least three Kirkland Co. properties with unusually high vacancy rates and expense rates went into foreclosure. Granderson Dep. [19-3] at 40–42, 44, 46. She even concedes in her summary-judgment response that she "testified properties were under performing [sic]." Pl.'s Opp'n Mem. [36] at 10.

Nonetheless, Granderson says Kirkland Co.'s work-performance rationale is pretextual, claiming that the underperformance was not her fault and that Bruce never formally documented her performance issues or disciplined her for those issues. Pl.'s Opp'n Mem. [36] at 10, 12. Starting with fault, Granderson admits that she "led the leadership of the properties" before Bruce turned his attention from expansion to day-to-day management. Granderson Dep. [19-3] at 29. And there is no dispute the properties were underperforming. But even if Bruce was wrong to fault Granderson, "[e]mployment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 214–15 (5th Cir. 2018) (per curiam) (quoting *Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006)). "[T]he issue at the pretext stage is whether [the employer's] reason, even if incorrect, was the real reason for" its decision. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015). Granderson has not demonstrated that her race or age was the real reason for shuffling the management duties.

As to the lack of discipline or documentation, this evidence is insufficient to establish pretext when the plaintiff fails to show why the lack of documentation or prior discipline should matter (for example, by introducing evidence of an employer's policy to document offenses or impose lesser sanctions prior to termination). *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015); *Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 914 (5th Cir. 2010); *see also Mire v. Tex. Plumbing Supply Co.*, 286 F. App'x 138, 143–44 (5th Cir. 2008) (per curiam). Granderson has not made this showing.

Had Granderson timely asserted the demotion-related claims, they would have failed under Rule 56 because disparate-treatment claims

> ultimately turn[] on "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."

*Laxton*, 333 F.3d at 579 (quoting *Wallace*, 271 F.3d at 220). Here, Granderson failed to establish a prima facie race or age case related to the demotion, though the Court alternatively considered the full record. At the very best, her prima facie cases are remarkably weak, and there is simply no evidence from which a reasonable fact finder could conclude that Bruce demoted Granderson due to her race or age.

Lastly, Bruce is the same person who hired Granderson and gave her the responsibilities he later redistributed. "The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x. 416, 421–22 (5th Cir. 2009). Granderson has not rebutted that inference and has not otherwise shown that the alleged demotion was based on race or age.

As noted, the Court considered the time-barred demotion claims because Granderson's merits argument in the hostile-work-environment section of her memorandum focused exclusively on the demotion. The Court inferred that she offered it as background evidence to prove that the harassment was based on race or age. Because the promotion claims fail as a matter of law, they cannot fill the causation void in the hostile-work-environment claim. And, as Kirkland Co. notes, there is no other evidence establishing that the alleged harassment was due to race or age. Neither Bruce nor anyone else at Kirkland Co. made any statements that might reflect race- or age-based animus, and the alleged acts of harassment themselves reveal no

15

obvious link to Granderson's race or age.  Accordingly, the Court finds that Granderson's hostile-work-environment claim must be dismissed.

IV.     Conclusion

The Court has considered all arguments; those not addressed would not change the results.  For the reasons stated, Kirkland Co.'s Motion for Summary Judgment [19] is granted.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 31st day of March, 2022.

                                        s/ *Daniel P. Jordan III*
                                        CHIEF UNITED STATES DISTRICT JUDGE